UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  02-cv-02014-WYD-MJW

THE COLORADO OFF-HIGHWAY VEHICLE COALITION, on behalf of its members,

     Plaintiff,

v.

THE UNITED STATES FOREST SERVICE, et al.,

     Defendants,

and

THE WILDERNESS SOCIETY, et al.

     Defendant-Intervenors.

_____

**ORDER**
_____

     This matter is before me on review of two administrative decisions issued by the United States Forest Service affecting motorized recreation in the Routt National Forest, located in north central Colorado.  Plaintiff Colorado Off-Highway Vehicle Coalition ("COHVC") asks this court to set aside these two decisions [Docket #25]. Defendant United States Forest Service ("USFS") asserts that these two decisions were proper and should be affirmed [Docket #28].  The Wilderness Society was allowed to intervene in this matter and has filed a Response to Plaintiff's Opening Brief as well [Docket #29].  After careful consideration of the record and the arguments, I affirm both of the administrative decisions.

I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

The present controversy concerns two decisions by the USDS: the *Decision Notice and Finding of No Significant Impact, Radial Mountain Travel Management Environmental Assessment, Medicine Bow-Routt National Forests*, issued June 13, 2001 ("Radial Mountain Decision"); and the *Trail 1135 Record of Decision, Medicine Bow-Routt National Forests and Thunder Basin National Grassland, Parks Ranger District*, issued October 1, 2001 ("Trail 1135 Decision").  Both of these decisions affect areas located within the Medicine Bow-Routt National Forest ("Routt Forest").  The Routt Forest is located in Northwest Colorado, touching the Wyoming border and covers approximately 217,184 acres.  AR Vol. II at 839.

COHVC argues that the USFS's decisions should be set aside for three specific reasons.  First, COHVC argues that the two decisions should be set aside because the USFS "violated the Administrative Procedure Act ("APA") by taking actions and making findings and conclusions that are arbitrary, capricious, abusive of discretion, or otherwise not in accordance with law."  Pl. Br. at 1.  Second, COHVC argues that these decisions violate the National Environmental Policy Act ("NEPA") and its supporting regulations "by failing to properly and fully analyze and disclose the potential environmental consequences of a major federal action in the proposal stage."  *Id.* Finally, COHVC argues that these decisions violate the "National Forest Management Act of 1976 ("NMFA"), 16 U.S.C. § 1600, *et seq.*, and its supporting regulations by failing to follow the requirements for compliance with and amendment of the Routt National Forest Land and Resource Management Plan (Forest Plan)."  *Id.*

Although COHVC challenges two specific decisions issued by USFS, it is important to understand the overall background in which these decisions were made. The Second Radial Mountain and Trail 1135 Decisions were not made in isolation; rather, they are responsive to prior policy decisions made by the USFS. Below, I will explain the USFS's actions leading up to the two relevant decisions, as well as the litigation history of these actions. Next, I will outline each relevant decision separately.

A. 1997 Decision Notice and Subsequent Litigation

In October of 1997, The USFS issued a Decision Notice which limited off-road vehicle use to designated roads and trails only in roughly 217,184 acres of the Routt Forest. At this point in time, the 1983 Forest Plan was in place.[1]  (AR vol. IV 2529-35). Included in the 1997 decision was a description of how the decision would be implemented.  (AR vol. IV 2530-31).  The 1997 decision directed that: (1) the "'no motorized travel except in designated routes' will be effective immediately in the approximately 26,000 acres of Enduro area covered by the Snyder Creek analysis and accompanying decision," (AR vol. IV 2530, phase 1), and (2) the USFS would delay the "implementation of this decision for two years on approximately 29,000 acres of Enduro area not covered by the Snyder Creek analysis and accompanying decision."  (AR vol. IV 2530, phase 2).  In the second directive, the USFS further explained that "by allowing motorized travel off of designated routes and trails to continue for two years in this area we will provide for existing motorized opportunities while conducting site-

---

[1]A forest plan is required by law and provides the overall management direction and general guidelines for use on units of the National Forest System. 16 U.S.C. § 1604. Typically, the Forest Plan is revised every 10-15 years. 36 C.F.R. § 219.10(g).

specific analysis to determine if additional motorized routes should be designated for year long use". (AR vol. IV 2531).

COHVC was dissatisfied with the 1997 Decision Notice and appealed this decision notice. Eventually, COHVC's challenge made its way to the United States Court of Appeals for the Tenth Circuit. *Colorado Off-Highway Vehicle Coalition v. U.S. Forest Service*, 357 F.3d 1130 (10th Cir. 2004). COHVC argued that the 1997 Decision Notice did not comply with the 1983 Forest Plan. *Id.* At the time the COHVC's appeal was before the Tenth Circuit, the 1983 Forest Service Plan had already been replaced by a 1997 Land and Resource Management ("1997 Forest Plan"). *Id.* at 1133. Because the 1997 Forest Plan had superceded the 1983 Forest Plan, the Tenth Circuit denied Plaintiff's appeal as moot. *Id.*

The 1997 Forest Plan adopted the "closed unless open" policy of the 1997 Decision Notice. Specifically, the 1997 Forest Plan prohibits "motorized use with wheeled vehicles on lands outside designated travelways unless a forest order indicates that such use is specifically allowed." AR Vol. II, at 868. To date, the 1997 Forest Plan remains in effect and the validity of the 1998 Plan is not an issue before this Court.

The 1997 Forest Plan includes specific directions on how to manage different land areas within the Routt Forest. AR Vol. II at 873-930. These land areas are called "management area prescriptions" and include: a theme (the general management direction), a setting (the general environment in which the management area is located), and desired condition (how the area will look and the opportunities available

in the future).  *Id.* at 874 In addition the management area prescriptions describe a set of standards and guidelines for that particular area.  *Id.*  The Radial Mountain Decision affected an area that was designated under Management Area Prescription 3.31–Backcountry Recreation Year Round Motorized.  The Trail 1135 Decision affected an area that was partially designated under Management Area Prescription 1.32–Backcountry Recreation Nonmotorized With Winter Limited Motorized–and partially designated under Management Area Prescription 5.13–Forest Products.

      B.  Radial Mountain Decision

      The Radial Mountain Decision process began on July 10, 1998, with a scoping letter issued by the USFS.  (AR Vol. IV 2698-2701).  This letter indicated that "the scope of the project [would] be limited to determining if additional single track motorized OHV routes should be designated within the 29,000 acre analysis area."  *Id.* at 2699.  The initial purpose of the project was, "to link the Snyder Creek motorized trail system to the existing designated, motorized trails in the Radial Mountain analysis area."  AR Vol. IV. at 2699.  The scoping letter invited comments from the public.  *Id.*

      In further anticipation of the Radial Mountain Decision, the USFS made a Finding of No Significant Impact ("FONSI") and prepared an Environmental Assessment ("Radial Mountain EA").  (AR Vol. IV 2734-2866).  The Radial Mountain EA contained a description of five alternative actions, including a "no action" alternative.  (AR Vol. IV 2749-2751).  The Radial Mountain EA also described one alternative that was eliminated from the study.  The USFS did not prepare a full EIS for the Radial Mountain Decision.

Initially, the USFS made a decision to implement Alternative 3, as described in the Radial Mountain EA.  (AR Vol. IV 2719-33).  Alternative 3 designated the additional single-track motorized routes described in alternative two, as well as designating an additional loop in the Rock Creek area and an additional loop to the north near the Pines Campground.  (AR Vol. IV 2750).  In this first Radial Mountain Decision Notice, the USFS explained that the Radial Mountain Decision "was initiated to complete the additional site-specific review identified in the October 10, 1997 Decision Notice."  (AR Vol IV 2719).  On January 22, 2001, COHVC and the Rocky Mountain Recreation Initiative ("RMRI") filed separate administrative appeals of the initial Radial Mountain Decision.  (AR Vol. IV 2867-2912).

Eventually, the USFS withdrew the First Radial Mountain Decision and the administrative appeals were dismissed.  In an e-mail, Parks District Ranger Charles Oliver explained that the decision was withdrawn in an effort to come to some sort of compromise with COHVC and RMRI regarding the Radial Mountain Decision.  (AR Vol. IV 2940).  In this e-mail, Ranger Oliver further explained that they "could not come to an agreement that would satisfy all parties. [They] did, however, find some common ground with [RMRI]."  *Id.*

On June 13, 2001, the USFS reissued the Radial Mountain Decision with one modification.  (AR Vol. IV 2941-56).  The Second Radial Mountain Decision explicitly stated that it was "a reissuance, which incorporates changes to the original decision that came about in an effort to resolve issues leading to an appeal of the December 5, 2000 decision."  *Id.*  The Second Radial Mountain Decision was the same as

Alternative 3 with one modification–in the Second Decision, the 5-mile loop in the Rock Creek area was not to be designated for single track motorized use. *Id.* at 2943.

After the reissuance of the Radial Mountain Decision, on July 30, 2001, COHVC filed another administrative appeal. (AR Vol. IV 2957-63). In its administrative appeal, COHVC asked that the decision be withdrawn. *Id.* at 2961. As grounds for its request, COHVC argued: First, that the "decision violate[d] NEPA by not including a true 'no action' alternative"; Second, that the "decision violate[d] NEPA because the finding of no significant impact (FONSI) is superficial and manipulated"; Third, that the "decision violate[d] the National Forest Management Act (NMFA) because it is Not Consistent with the Forest Plan"; and Fourth, that the "decision violate[d] NEPA and is arbitrary and capricious because the District Ranger has failed to explain how the June 13, 2001 decision is preferable to the December 5, 2000 decision." *Id.* at 2957-63. On September 13, 2001, the USFS denied COHVC's appeal.

C. <u>Trail 1135 Decision</u>

The process leading to the Trail 1135 Decision began on January 4, 2000, when the USFS issued a scoping letter announcing that it was considering a "proposal to close Forest Development Trail (FDT) 1135 (Arapaho Ridge Trail) to motorized use." (AR Vol. V at 3014). The scoping letter explained that the proposed action was a result of the changes from the 1983 Forest Plan to the 1997 Forest Plan. The 1997 Forest Plan changed the perimeters of the prescription areas. As a result of this change, the "middle portion of [Trail 1135] is now located in Forest Plan Management Area 1.32, Backcountry Recreation, Non-Motorized with Limited Motorized Use in Winter." (AR

Vol. V 3014).  The letter also explained that "[a]llowing motorized travel to continue on portions of the trail currently falling within the non-motorized prescription conflicts with the 1997 Routt National Forest Plan."  *Id.*

On October 2001, the USFS issued a Final Environmental Impact Statement ("EIS") prepared for the Trail 1135 Decision.  (AR Vol. V 3351-3443).  The EIS described the proposed action, as well as four alternatives that were considered in the decision process.  *Id.* at 3354-67.  Two alternatives that were not considered in the process were also described.  *Id.* at 3367-68.  Ultimately, the USFS issued a Record of Decision for the Trail 1135 Decision on December 19, 2001.  In the Record of Decision, Parks District Ranger Charles T. Oliver explained that it was his decision to implement the proposed action, as described in the EIS.  (AR Vol. V 3337).  This was a decision to close FDT 1135 and FDR's 711.1 and 711.1a to motorized use.

COHVC appealed the USFS decision to the Appeals Deciding Officer on February 12, 2002.  (AR Vol. V 3448-3470).  By this appeal, COHVC sought the reversal of the Trail 1135 Decision.  *Id.*  As grounds for its request, COHVC argued: First, that the "decision violate[d] the APA and other Federal Statutes because it [was] arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law; Second, that the "decision violate[d] the 'Hard Look' requirement of the [NEPA] because it has no factual basis and is entirely devoid of scientific analysis"; Third, that the "decision violate[d] [NEPA] because the environmental impact statement contains an insufficient range of alternatives and the outcome of the environmental analysis was predetermined"; and Fourth, that "the decision violate[d] the [NMFA] because it is not

consistent with the Forest Plan."   On September 13, 2001, the USFS denied COHVC's appeal.

II.    APA

The Administrative Procedures Act ("APA") makes final agency action for which there is no other adequate remedy in a court subject to judicial review.  5 U.S.C. § 704. Section 706 mandates that a "reviewing court shall...(2) hold unlawful and set aside agency action, findings, and conclusions found to be–(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A). "The APA's arbitrary and capricious standard is a deferential one; administrative determinations may be set aside only for substantial procedural or substantive reasons, and the court cannot substitute its judgment for that of the agency."  *Utahns for Better Trans. v. U.S. Dept. Of Trans.*, 305 F.3d 1152, 1164 (10th Cir. 2002).

Defendant has the burden of proving that the agency's decision was arbitrary and capricious.  *Utah Shared Access Alliance v. Wagner*, 98 F.Supp.2d 1323, 1328 (D.Utah 2000).  "An agency decision will be considered arbitrary and capricious if 'the agency has relied on factors which Congress had not intended to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"  *Id.* quoting *Friends of the Bow v. Thompson*, 124 F.3d 1210, 1215 (10th Cir. 1997).  I must review an agency's compliance with NEPA and NMFA pursuant to the APA.  See e.g. *Silverton Snowmobile Club v. USFS*, 433 F.3d 772, 779-80 (10th Cir. 2006).

III.    NEPA

COHVC first argues that the Second Radial Mountain and Trail 1135 Decisions violate the National Environmental Policy Act ("NEPA").  Below, I will briefly summarize NEPA's statutory and regulatory requirements.  Then I will discuss each of COHVC's arguments in turn.

A.    Statutory Overview

The National Environmental Policy Act of 1969 ("NEPA") "prescribes the necessary process by which federal agencies must 'take a 'hard look' at the environmental consequences of the proposed courses of action."  *Silverton Snowmobile Club*, 433 F.3d at 780.  "[O]nce environmental concerns are adequately identified and evaluated by the agency, NEPA places no further constraint on agency actions."  *Id*.  Further, the Council on Environmental Quality ("CEQ") has issued regulations that must be followed in order for an agency to comply with NEPA.

NEPA mandates that "before an agency may take 'major Federal actions significantly affecting the quality of the human environment,' an agency must prepare an environmental impact statement ("EIS") in which the agency considers the environmental impacts of the proposed action and evaluates 'alternatives to the proposed action,' including the option of taking 'no action.'"  *Silverton Snowmobile Club*, 433 F.3d at 780, citing to 42 U.S.C. § 4332(2)(c).  However, "agencies need not prepare a full EIS ... if they initially prepare the less detailed environmental assessment ("EA") and, based on the EA, issue a finding of no significant impact ("FONSI"),

concluding that the proposed action will not significantly affect the environment."

*Silverton Snowmobile Club*, 433 F.3d at 780.

"The role of the courts in reviewing compliance with NEPA 'is simply to ensure that the agency has adequately considered and disclosed the environmental impact of its actions and that its decision is not arbitrary and capricious." *Utahns for Better Trans.*, 305 F.3d at 1163. "So long as the record demonstrates that agencies in question followed [NEPA] procedures, which require agencies to take a 'hard look' at the environmental consequences of the proposed action, the court will not second-guess the wisdom of the ultimate decision." *Id.* at 1152. The Supreme Court has noted that "it is now well settled that NEPA itself does not mandate particular results, but simply prescribes the necessary process." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989).

A court must "review substantive agency decisions concerning NEPA under the 'arbitrary and capricious' standard, meaning that [the court] must determine whether the decision by [the agency] was 'based on consideration of the relevant factors,' or whether [its] actions were 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Metcalf v. Daley*, 214 F.3d 1135, 1142 (9th Cir. 2000). "Under this deferential standard, we must defer to an agency's decision that is 'fully informed and well-considered." *Id.*

B.     Analysis

COHVC argues that the USFS violated NEPA for four distinct reasons: (1) the USFS should have evaluated the environmental consequences of both the Radial

Mountain Decision and the Trail 1135 Decision in a single EIS, (2) the USFS did not consider a "reasonable range of alternatives" for either decision, (3) neither decision considered a "no action" alternative, and (4) the reissuance of the Radial Mountain Decision after appeals were filed was improper.

1.     Whether the USFS Should Have Prepared a Single EIS Assessing the Two Decisions Simultaneously

COHVC first argues that the two relevant decisions should have been analyzed in a single Environmental Impact Statement. (Pl. Opening Br. 11-14). Specifically, COHVC asserts that these two decisions have common geography, common timing, and common subject matter. *Id.* Further, COHVC asserts that the two decisions were "reasonably foreseeable to each other," and "depend entirely on each other for their justification." *Id.*

After reviewing COHVC's appeals of the two relevant decisions, I find that this particular argument was not included in either of Plaintiff's appeals. Accordingly, the claim is unexhausted. Pursuant to the APA, exhaustion of administrative remedies is only a requirement if the it is a requirement of the applicable statutory scheme. 5 U.S.C. § 704; *Darby v. Cisneros*, 509 U.S. 137, 146 (1993). In the case at hand, the Department of Agriculture Reorganization Act of 1994 provides the statutory framework and requires that, "a person *shall* exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against–(1) the Secretary; (2) the Department; or (3)

an agency, office, officer, or employee of the Department." 7 U.S.C. § 6912(e)

(emphasis added).

Reviewing a decision based on an argument that was not brought before the

agency would "usurp the agency's function when we set aside the administrative

determination upon a ground not theretofore presented to the agency." *Kleissler v.*

*USFS*, 183 F.3d 196, 200 (3d Cir. 1999)(internal quotations omitted).  Accordingly, I

find that COHCV's argument that the USFS should have considered the two relevant

decisions in a single document is unexhausted and is not properly before this Court.

Further, I find that Plaintiff has failed to put forth any legitimate reason to waive the

exhaustion requirement in this instance.  For the foregoing reasons, I will not address

the merits of this argument.

        2.       Whether the EA and EIS Consider a Reasonable Range of
                 Alternatives

COHVC also argues that the EA prepared for the Radial Mountain decision and

the EIS prepared for the Trail 1135 Decision do not contain a "reasonable range of

alternatives" as required by NEPA.  (Pl. Br. 15-22).  The discussion of alternatives is

"the heart of the environmental impact statement."[2]  40 C.F.R. § 1502.14.  "NEPA

requires a detailed EIS to ensure that each agency decision maker has before him and

takes into proper account all possible approaches to a particular project (including total

abandonment of the project) which would alter the environmental impact and the cost-

benefit balance."  *All Indian Pueblo Council*, 975 F.2d 1437, 1444 (10th Cir. 1992)

---

[2]NEPA makes no mention of the EA, however, the CEQ regulation outline the
requirements for preparing an EA.  40 C.F.R. § 1500 *et. seq.*

quoting *Calvert Cliff's Coordinating Comm., Inc. v. United States Atomic Energy Comm'n*, 449 F.2d 1109, 1114 (D.C. Cir. 1971).  However, "NEPA does not require agencies to analyze 'the environmental consequences of alternatives it has in good faith rejected as too remote, speculative, or ... impractical or ineffective.'" *Id.* quoting *City of Aurora v. Hunt*, 749 F.2d 1457, 1467 (10th Cir. 1984)(overruled on other grounds).  A reviewing court tests an EIS under a "rule of reason" standard of review. *All Indian Pueblo Council*, 975 F.2d at 1445.  This standard requires that the EIS "contains sufficient discussion of the relevant issues and opposing viewpoints to enable the decisionmaker to take a 'hard look' at environmental factors, and to make a reasoned decision." *Id.*

As part of the "reasonable range of alternatives," an EIS must "include the alternative of no-action."  40 C.F.R. § 1502.14(d).  The consideration of a "no-action" alternative is intended to require that "agencies compare the potential impacts of the proposed major federal action to the known impacts of maintaining the status quo." *Custer County Action Assoc. v. Garvey*, 256 F.3d 1024, 1040 (10th Cir. 2001).  For the "no-action" alternative, "the current level of activity is used as a benchmark." *Id.*  "The requirement to consider a no-action alternative does not provide [Plaintiff] a vehicle in which to pursue allegations that past [agency] actions received insufficient environmental analysis." *Id.*

a.  Radial Mountain Decision

COHVC argues that the EA prepared in anticipation of the Radial Mountain Decision does not consider a reasonable range of alternatives for two reasons.   First,

COHVC argues that the EA lacks a "no-action" alternative.  Second, COHVC argues that the EA does not compare a reasonable range of alternatives.  I will analyze each argument below.

COHVC argues that because the 1997 decision was still being litigated, there was not a true "no-action" alternative in the EA.  Contrary to COHVC's argument, I find that the EA does consider a "no-action" alternative.  As explained above, a "no-action" alternative is the impact of "maintaining the status quo."  The validity of earlier decisions affecting the status quo is not an issue in the no-action analysis.  See *Custer County Action Assoc.*, 256 F.3d 1024.  At the time that the Radial Mountain decision was issued, the 1997 decision was in place; thus, the status quo was that all trails in this area were closed to motorized use unless marked open.  The Radial Mountain EA described the no-action alternative as follows:

> This alternative is based on the existing situation.  This alternative would leave the existing user-created trails unchanged.  These trails could be used as identified in the Calamity Pass Enduro EA, but they are not open to public use.  Other than annual work identified in the Calamity Pass Enduro event special use permit, no restoration work would occur.  No additional trails would be identified for designation.
> AR Vol. IV at 2727-28.

This alternative describes the current status of the Radial Mountain area at the time the proposed action was being considered.

I also find that the EA considers a reasonable range of alternatives.  COHVC's argument appears to be that the USFS acted improperly by including Alternative 2 and 4 in the Radial Mountain EA.  (Pl. Br. at 18).  Alternative 2 purported to designate 10.5 miles of trails.  COHVC argues that this Alternative did not create enough trail mileage

to "meet the increasing need for OHV recreation opportunities that supposedly lead to this proposal." *Id.* To the contrary, I find that Alternative 2 was properly considered in the EA. Although COHVC wanted more mileage designated for motorized use, Alternative 2 is within reason. I also find that the USFS did not improperly consider Alternative 4 in the Radial Mountain EA. Alternative 4 identifies additional projects that would be included if either Alternative 2, 3 or 5 were selected. AR Vol. IV. at 2729. COHVC cites to no authority indicating that including an alternative which supplements other potential alternatives is improper.

b. Trail 1135 Decision

COHVC also argues that the Trail 1135 Decision EIS does not contain a reasonable range of alternatives for two reasons. First, COHVC argues that the terms and objectives are defined so narrowly that the result is predetermined. Second, COHVC argues that the EIS does not have a viable "no-action" alternative. I will consider each argument, in turn, below.

COHVC asserts that the definition of the objectives in the Trail 1135 Decision is so narrow that the objectives can only be accomplished by one alternative, the proposed alternative. (Pl. Br. at 19). The purpose for the Trail 1135 decision was described in the EIS as follows:

> the purpose of this action is to resolve the conflict between motorized use of FDT 1135 and FDR's 711.1, and 711.1a and Management Area direction contained in the 1997 Revision of the Routt National Forest Plan. Currently, the area around and including the majority of FDT 1135, FDR 711.1, and FDR 711.1a is in a non-motorized Forest Plan Management Area prescription (MA1.32). AR Vol. V at 3358.

Further, the EIS explained that:

> the action [was] needed to bring the routes into compliance with the 1997 Revision of the Routt National Forest Plan.  *Id.*

COHVC argues that each alternative, except for closing Trail 1135 to motorized use, "was doomed to failure because the 1997 Revision of the Forest Plan does not allow the use of motorized vehicles in areas under the 1.32 Management Area Prescription. " (Pl. Br. at 19).

COHVC fails to take into consideration, however, that the objective could have also been met by amending the 1997 Forest Plan to allow for motorized use on Trail 1135.  In fact, the EIS explicitly recognized that:

> [The objective] could occur in two ways: 1) closing FDT 1135 and FDR's 711.1, and 711.1a to motorized use; *or* 2) Amending the Plan to allow continued motorized use of the routes.
> AR Vol. V at 3358 (emphasis added).

Accordingly, I do not find that the six alternatives considered in addition to the proposed alternative were illusory as COHVC asserts.

I also find that the Trail 1135 EIS contained a "no-action" alternative.  Alternative 1 of the EIS is the "no-action" alternative and describes a situation where motorized use would continue on Trail 1135, FDR 711.1, and FDR 711.1a and the 1997 Forest Plan would not be amended.  (AR Vol. V at 3365).  This is a proper description of the status quo at the time the Trail 1135 Decision was made.

3.      Whether USFS Improperly Re-issued the Radial Mountain Decision

COHVC further argues that the USFS violated NEPA because the decision to remove the Rock Creek Loop from the Radial Mountain Decision was an "unsubstantiated determination."  (Pl. Br. at 26).  As explained above, the USFS first issued a decision adopting Alternative 3.  After COHVCO and RMRI appealed the decision, the USFS engaged in negotiations with these parties.  After the negotiations, USFS re-issued the Radial Mountain Decision adopting Alternative Three with one modification–the Rock Creek Loop would not be designated for motorized use.

First, COHVC argues that "the central unsubstantiated determination" made by the Forest Service is that the June 13, 2001 Decision (Second Radial Mountain DN) somehow complies with statutory madate, where the prior decision of December 5, 2000 (First Radial Mountain DN) did not."  (Pl. Br. at 27).  COHVC has not shown, nor has the USFS in any way conceded, that the First Radial Mountain Decision did not comply with NEPA.  Accordingly, I find this first argument to be without merit.

Second, COHVC argues that the Radial Mountain Decision "does not set forth requisite scientific data to explain the differences in the new and prior decisions."  (Pl. Br. at 28).  I find that the Radial Mountain Decision does, in fact, support the ultimate decision of the USFS to adopt a modified version of Alternative 3.  The USFS explained that, "[t]his modification in Alternative 3 falls within the parameters analyzed in the Radial Mountain Travel Management EA, therefore, all affects were fully disclosed." (AR Vol. IV at 2943).  Further, the Radial Mountain Decision states that the USFS "carefully considered the analysis developed for all alternatives described in the EA,

the issues raised during the public comment periods for this analysis, the requirements

set forth in the Land and Resource Management Plan (Forest Plan) for the Routt

National Forest, and the requirements set forth in other applicable laws, regulations,

and policies." *Id.* at 2943.

The USFS also offers various explanations for its decision to implement

Alternative 3 modified.  (AR Vol. IV. 2941-2958).  These explanations include:

> Alternative 3 Modified better provides for addressing the concerns of the
> motorized community while allowing us to move forward with restoration of user-
> created trails in the area, which are adding to sedimentation in the drainage.  *Id.*
> at 2948.
>
> [I]t is more realistic that we could complete and maintain the system identified in
> Alternative 3 Modified...  *Id.*
>
> [I]t is important to understand there are an additional 296.7 mile of open roads
> available for motorized travel ... these opportunities, together with the 55 miles of
> Snyder Creek trails, 22.7 miles of Radial Mountain traisl that would be
> authorized under Alternative 3 Modified, the existing 17.9 miles of trails in the
> area, and 35 miles of motorcycle and ATV trails on the adjacent Arapaho
> National Fores, provide a wide variety of motorized trail opportunities.  *Id.*

In sum, I do not find that the Radial Mountain Decision was an "unsubstantiated

determination" and I reject COHVC's argument.  To the contrary, the Radial Mountain

Decision was a thoughtful decision and the USFS adequately explained the basis of its

determination in the Radial Mountain Decision Notice.

> 4.     Whether the USFS Failed to Take a Hard Look at the Environmental
>        Consequences of the Radial Mountain and Trail 1135 Decisions

COHVC also argues that the USFS did not take a "hard look" at the potential

environmental consequences of the two relevant decisions, the Radial Mountain

Decision and the Trail 1135 Decision.  The flaw in COHVC's argument is that COHVC

attempts to argue that the USFS violated NEPA because of the substance of its decisions, rather than directing the court's attention to a procedural error.  Accordingly, I find this argument to be without merit.

As explained above, "NEPA sets forth a set of action-forcing procedures that require that agencies take a hard look at environmental consequences." *Friends of the Bow*, 124 F.3d at 1213 (10th Cir. 1997).  "Importantly, the statute does not impose substantive limits on agency conduct.  Rather, once environmental concerns are 'adequately identified and evaluated' by the agency, NEPA places no further constraint on agency actions." *Id*.  In the instant case, I find the USFS adequately identified and evaluated the environmental concerns associated with both of the relevant decisions in the respective EA and EIS.

IV.    NFMA

Finally, COHVC argues that both the Radial Mountain and the Trail 1135 Decisions violate the National Forest Management Act ("NMFA") because the decisions do not comply with the 1997 Routt Forest Plan.  As for the Radial Mountain Decision, COHVC argues that this decision is inconsistent with the Management Area Prescription that is designated for the Radial Mountain area–Prescription 3.31. COHVC similarly argues that the Trail 1135 Decision is inconsistent with the Management Area Prescription that is designated to a portion of Trail 1135–Prescription 5.13.

A.  Statutory Overview

The NMFA, 16 U.S.C. § 1601 *et seq.*, sets up the framework for forest planning.

"NFMA provides substantive guidance, while NEPA provides purely procedural

guidance."  *Arizona Cattle Growers' Ass'n v. Cartwright*, 29 F.Supp.2d 1100, 1110

(D.Ariz. 1998).  Pursuant to NFMA, the Secretary must "develop, maintain, and, as

appropriate, revise land and resource management plans for units of the National

Forest System."  16 U.S.C. § 1604(e).  As explained above, the current land and

resource management plan in place for the Routt National Forest is the 1997 Plan.

Once the plan is in place, "the Forest Service is required to implement the forest plan

by approving or disapproving specific projects."  *Lamb v. Thompson*, 265 F.3d 1038,

1042 (10th Cir. 2001).  "Projects must be consistent with the governing forest plan and

are subject to the procedural requirements of NEPA."  *Id.*

B.    Analysis

1.    Whether the Radial Mountain Decision Complies with the 1997
Forest Plan

COHVC argues tha the relevant Management Area Prescription required that the

USFS designate the Rock Creek Loop for motorized use.  The five-mile Rock Creek

Loop lies within an area that is designated under Management Area Prescription 3.31

("MAP 3.31").  MAP 3.31 is described in detail in the 1997 Forest Plan.  (AR Vol. II at

901-902).  The theme of MAP 3.31 is described as "Backcountry, motorized recreation

areas are managed to provide recreation opportunities on primitive roads and trails in a

landscape with a natural appearance."

While it is possible for USFS to designate trails for motorized use within a MAP 3.31 area, I reject COHVC's argument that MAP 3.31 mandates that USFS designate a trail for motorized use.  The Recreation Guidelines explicitly state that "some trails may be restricted to non-motorized use."  (AR Vol. II at 902).  Accordingly, MAP 3.31 allows for trails to be either designated for motorized use *or* restricted to non-motorized use. In the instant case, the USFS determined that the Rock Creek Loop should be restricted to non-motorized use.  I find that this determination is entirely consistent with MAP 3.31 and, accordingly, I find that this determination complied with the 1997 Forest Plan.

>       2.      Whether the Trail 1135 Decision Complies with the 1997 Forest
>               Plan

COHVC similarly argues that the Trail 1135 Decision is inconsistent with Management Prescription Area 5.13 ("MAP 5.13") which applies to three miles at either end of Trail 1135.  (Pl. Br. at 30).  COHVC specifically argues that the Trail 1135 EIS ignores the *requirements* of MAP 5.13.  *Id.*  Similar to the situation of MAP 3.13, I find that motorized use under MAP 5.13 is permissible but not mandatory.

MAP 5.13 is described in detail in the 1997 Forest Plan.  (AR Vol. II at 917-919). The theme of MAP 5.13 is described as "Areas are managed to produce commercial wood products."  *Id.* at 917.  While MAP 5.13 does explain that "motorized and nonmotorized recreation opportunities will be provided," designating roads for motorized use is clearly not mandated under this prescription area.  *Id.* at 918. Athough a portion of Trail 1135 does fall within MAP 5.13, the USFS had the discretion

to restrict this trail to non-motorized use.  Accordingly, I find that the Trail 1135

Decision is compatible with the 1997 Forest Plan and complies with the NMFA.

IV.   CONCLUSION

In sum, despite COHVC's numerous and indiscriminate arguments, COHVC has

failed to demonstrate any basis for setting aside the two relevant USFS decisions.

Accordingly, it is

ORDERED that the *Decision Notice and Finding of No Significant Impact, Radial

Mountain Travel Management Environmental Assessment, Medicine Bow-Routt

National Forests*, issued June 13, 2001, is **AFFIRMED**.  It is

FURTHER ORDERED that the *Trail 1135 Record of Decision, M3edicine Bow-

Routt National Forests and Thunder Basin National Grassland, Parks Ranger District*,

issued October 1, 2001, is **AFFIRMED**.  It is

FURTHER ORDERED that this matter is **DISMISSED WITH PREJUDICE**.


Dated:  February 26, 2007


                         BY THE COURT:


                         s/ Wiley Y. Daniel
                         Wiley Y. Daniel
                         U. S. District Judge